1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11
JOSHUA MICHAEL GODFREY,

Case No.  1:19-cv-01197-JLT-HBK (HC)

12
Petitioner,

FINDINGS AND RECOMMENDATIONS TO
DENY PETITION FOR WRIT OF HABEAS
CORPUS AND TO DECLINE TO ISSUE A
CERTIFICATE OF APPEALABILITY[1]

13
v.

14
WARDEN PBSP,

FOURTEEN-DAY OBJECTION PERIOD

15
Respondent.

(Doc. No. 1)

16

17          Petitioner Joshua Michael Godfrey ("Petitioner"), a state prisoner proceeding pro se, filed

18   a petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. No. 1, "Petition").  The

19   Petition raises two grounds for relief: (1) Petitioner's due process rights were violated when

20   correctional officials failed to comply with time limitations during a disciplinary hearing; and (2)

21   insufficient evidence supported the disciplinary finding that Petitioner was guilty of distribution

22   of controlled substances.  (*See generally id.*).  As relief, Petitioner requests the disciplinary

23   charges be "dismissed without prejudice" and for "any all relief available" to Petitioner.  (*Id*. at

24   14).  For the reasons set forth below, the undersigned recommends the Court deny Petitioner any

25   relief on his petition and decline to issue a certificate of appealability.

26          /////

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).

# I. BACKGROUND

## A. Procedural History

Petitioner initiated this case on August 7, 2019 by filing the instant Petition in the Northern District of California, which was transferred to this Court.  (Doc. No. 1, 6).  After being ordered to respond to the Petition, Respondent filed a Motion to Dismiss for lack of federal habeas jurisdiction on March 27, 2020.  (Doc. No. 19).  After ordering additional briefing,  the undersigned entered Findings and Recommendations to deny Respondent's Motion to Dismiss. (Doc. Nos. 29, 34).  The Court adopted the Findings and Recommendations and denied Respondent's Motion to Dismiss.  (Doc. No. 35).  After being ordered to respond to the merits of the Petition, Respondent filed an answer to the petition and lodged the pertinent state court record.  (Doc. No. 38).  Petitioner filed a traverse.  (Doc. No. 40).  This matter is submitted on the record.

## B. Facts Based Upon the Record

Petitioner is serving a determinate 31-year and four-month state prison sentence for his 2010 plea-based conviction for carjacking, robbery and assault with a semi-automatic firearm entered by the San Mateo Superior Court.  (Doc. No. 38-1).

On July 30, 2014, Reporting Employee and Correctional Officer ("C/O") M. Clearly, Investigative services Unit (ISU), opened an investigation into the circumstances surrounding the discovery of what appeared to be methamphetamines mailed into [Pelican Bay State Prison] via the United States Postal Service with a preliminary finding of it being positive for methamphetamines.  (*See* Doc. No. 38-2 at 26).  On September 23, 2014, C/O M. Cleary concluded the investigation and wrote a rules violation report ("RVR") charging Petitioner with "distribution of any controlled substance in an institution/facility or contract health facility" in violation of 15 Cal. Code Regs. § 3016(c).  (*Id*. at 11-12, 29-36).  On October 7, 2014, Petitioner requested the postponement of the hearing pending resolution of possible criminal prosecution. (*Id*. at 38).  One February 2, 2016, notice was received from the Del Norte County District Attorney's Office that they declined to prosecute, and that the charges were dismissed without an acquittal.  (*Id*. at 37).  Petitioner requested and was assigned an investigative employee, and the

investigative report was reviewed by the SHO in the hearing. (*See* Doc. No. 38-2 at 14-16) ("GODFREY acknowledges receiving and reviewing the completed Investigative Employee report more than 24 hours in advance of the hearing. In the hearing, GODFREY stated that he was satisfied with the Investigative Employee report.")(capitalization in original).

On February 29, 2016, a disciplinary hearing was convened, but was postponed because the reporting employee, C.O. Cleary who Petitioner had requested to testify, was not available to appear as a witness. (*Id*. at 16). The hearing reconvened on March 2, 2016. (*Id*.). Petitioner appeared at the hearing and stated that he was in good health and had received a copy of all pertinent documents more than 24 hours in advance of the hearing. (*Id*.).

At the hearing, Petitioner pled "not guilty" and testified as follows:

> I did not make any of those phone calls. I have never seen any of those letters. They were not mine or in my property. The evidence does not support the charges because I never got any money. I didn't sign up for any phone calls.

(*Id*. at 17).

In response to questions from Petitioner, C/O Cleary following testimony:

> The search of GODFREY'S personal property was not video recorded as this is not required per any departmental policy. Anything that was utilized as evidence in this case was processed into evidence and remains in evidence within the Security Squad Complex. He is absolutely positive that the letters addressed to GODFREY containing Methamphetamine were discovered within the personal property of GODFREY. At the time that the search took place of GODFREY and GIBSON'S personal property that had been seized and was the only property searched at that time.

(*Id*.). Finally, it was stipulated as the testimony of the Control Booth Officer assigned to Facility A, Building Seven, during the dates of June and July 2014 that "[i]t is possible that if the Control Booth Officer was distracted during Dayroom for example another inmate could utilize the Inmate Ward Telephone Service without the Control Booth Officers knowledge and that inmates do not sign up for phone calls on the Phone Log." (*Id*. at 18).

Based on the following evidence, the hearing officer found Petitioner guilty of distribution of any controlled substance in an institution/facility:[2]

---

[2] As noted by the SHO, Cal. Code Regs. tit. 15, § 3000 and § 3016 "requires two-levels of evidence: first, possession of a controlled substance in an institution must be proven. This means a controlled substance

1.  The testimony of Correctional Officer M. Cleary in the disciplinary report of September 23, 2014 wherein Correctional Officer Cleary testifies that on July 31, 2014 he initiated an investigation into the circumstances surrounding the discovery of methamphetamine that was mailed into Pelican Bay State Prison (PBSP), Facility A, Section B, on July 31, 2014.

On Tuesday, September 23, 2014, he concluded .the investigation. Information contained in this investigation identified inmate Joshua Michael GODFREY, [] facilitating the Introduction of a Controlled Substance into an institution. Therefore, September 23, 2014, shall serve as the discovery date for this offense.  This investigation is documented on Confidential Memorandum dated September 23, 2014, located in the confidential section of GODFREY'S central file. … Information contained in the memorandum uncovers a large methamphetamine distribution network that was accomplished via the United States Postal Service.  The methamphetamine distribution network was carried out by a member in the community, and facilitated in part by inmate GODFREY, and several other inmates housed on Facility A, Unit 8, Section B, at Pelican Bay State Prison.

Three separate incoming correspondences were either recovered in the personal property belonging to GODFREY, or intercepted before reaching GODFREY. These three correspondences consisted of three envelopes that all contained methamphetamine secreted under the postage stamps. Additionally, through investigation, the identity of the member of the community was uncovered. A search was conducted [at] the member in the community's residence, and another similar correspondence was discovered addressed to GODFREY.

Furthermore, evidenced in this memorandum is the descriptive content of three telephone calls placed by GODFREY from the Inmate Ward Telephone System (IWTS). Three calls were placed to the same telephone number belonging to the member of the community, who was introducing controlled substances into Facility A, Unit 8, Section B.  The telephone calls placed by GODFREY to the member of the community contain coded dialogue describing details of the introduction of controlled substances into the institution.  Specifically, the memorandum contains the following information:

---

must be found in the possession of at least one member of the distribution network and, per CCR 3290, it must be identified as a controlled substance by laboratory testing.  Second, in the case of each inmate found guilty of this charge, there must be evidence of something more than personal use.  There must be evidence that the inmate is promoting or assisting in the distribution of the controlled substance to other inmates.  This evidence might include confidential information, large quantities that exceed a reasonable amount for personal use, packaging or evidence of income from drug sales."

4

a. June 19, 2014, GODFREY relays information from another inmate to the member in the community about selling methamphetamine.

b. July 13, 2014, GODFREY identifies himself by his first name and relays a fourteen-digit Green Dot account number to the member in the community.  Additionally, in this call, GODFREY instructs the member in the community to send him four letters containing methamphetamine, and four to another inmate.

c. July 14, 2014, GODFREY confirms information relayed during previous call.

d. Other information contained in the memorandum document the results of the Green Dot subpoena that corroborates several of the fourteen-digit Green Dot numbers relayed by several inmates and credited to the pre-paid debit card belonging to the member in the community, who was introducing the controlled substances.  One of the aforementioned Green Dot account numbers on the subpoena matched the number relayed by GODFREY.

2. The testimony of [C/O] M. Cleary in the Crime Incident Report of July 30, 2014 wherein [C/O] Cleary testifies that on July 30, 2014 Methamphetamines were discovered secreted under the postage stamp on an incoming letter addressed to inmate GODFREY [].

a. On July 31, 2014 a search was conducted by [PBSP] Investigative Services Unit (ISU) staff of inmates GODFREY AND GIBSON [] assigned cell.  During the search he discovered two additional letters containing Methamphetamine secreted under postage stamps.  One letter was addressed to GODFREY and one to GIBSON.

b. On July 31, 2014 [C/O] Cleary initiated an investigation into the Distribution of Narcotics at PBSP involving inmates [GODFREY].

c. During the course of the investigation forty-nine Inmate Ward Telephone System (IWTS) phone calls were monitored showing that the amounts of Methamphetamine as well as the frequency of the distribution would indicate that they are much more than the amounts typically used for personal consumption.

d. Evidence within the phone calls reveals that approximately seventy-five to one hundred mailings containing Methamphetamine were likely mailed into Facility A, Building 8, B Section between the dates of March 7, 2014 and July 31, 2014.

5

e.   Multiple Green Dot account numbers were relayed from several inmates via the IWTS to [the community member] Shirley Withers for payment of Methamphetamines.

f.   On August 13, 2014, a joint operation was conducted with member of the PBSP ISU, California Department of Corrections and Rehabilitation (CDCR), Special Services Unit (SSU) and High Desert State Prison (HDSP) ISU for the service of an Arrest Warrant of Shirley Withers and a Search Warrant of the premises at which she resides.  The search led to the discovery of Methamphetamines, Items of Drug Paraphernalia, glass pipe with spoon, syringes, postage stamps similar to the stamps recovered in the aforementioned mailings and one letter addressed to GODFREY.

g.   On August 25, 2014 records relevant to this investigation were subpoenaed from the Green Dot Cooperation.  On August 29, 2014 the records were received.  The account number from one of the pre-paid debit cards recovered from Shirley Withers matched corresponding Green Dot transactions that corresponded with Green Dot account numbers that were relayed to Withers from the involved inmates.  Records corroborate that Shirley Withers redeemed at least nine hundred ten dollars from the inmates identified in this investigation.

3.   The testimony of [C/O] Cleary in the Confidential Memorandum dated September 23, 2014 wherein [C/O] Cleary testifies that on July 31, 2014 he initiated [an] investigation relative to the discovery of Methamphetamine secreted under a postage stamp on an incoming letter addressed to inmate Joshua GODFREY [].  As a result of the investigation, a Narcotics Distribution Network at PBSP has been identified involving [inmate GODFREY].  This Narcotics Distribution Network was facilitated by the assistance of a civilian identified as Shirley Withers, [].

4.   Department of Justice, Bureau of Forensic Services report dated August 26, 2014 identifying item number two as 0.020 net grams of Methamphetamine and item number five as 0.042 net grams of Methamphetamine.

5.   Eighty-two evidentiary photographs [] depicting various mailings addressed to GODFREY [] and GIBSON [] showing the presence of Methamphetamine secreted behind the stamp, NarcoPouch Methamphetamine MDMA (Ecstasy) Reagent showing presumptive positive tests for Methamphetamine, personal photographs, tow MasterCard Debit cards in the name of Shirley Withers and identification photographs of Shirley Withers and Sara Gibson.

6.   Consideration was given to the plea and testimony provided by GODFREY.  In review of the audio recordings of the telephone calls made by and speaking with GODFREY during the Disciplinary Hearing the voice and characteristics were close enough to conclude that GODFREY placed the phone calls as alleged. [C/O] Cleary in response to questions presented by GODFREY during the hearing states that he was absolutely positive the letters recovered addressed to GODFREY were discovered within the personal property removed from GODFREY'S cell.

(*Id*. at 18-21).

Petitioner was assessed 180 days of loss of time credits, was subject to random drug testing for one year, had all privileges suspended for 30 days, and was not allowed any visits for one year.  (*Id*. at 21).

In April 2016, Petitioner filed a prison appeal (CDCR 602), contending (1) that he was denied due process because the incident occurred over two years prior to the hearing, thus violating the forty-five day maximum deadline, and (2) there is insufficient evidence to support the guilty finding.  (*Id*. at 62-65, 72).  The record contains multiple additional prison appeals claiming "staff misconduct – falsified documents" because, according to Petitioner, the date of his "115 hearing" actually took place March 4, 2016 as opposed to the "recorded date" of March 2, 2016 which resulted in improper credit forfeiture.  (*Id*. at 51, 54, 57).   In support of this argument, he referenced the senior hearing examiner's September 28, 2016 response to Petitioner's previous request to modify the date in which he appeared to acknowledge that "[i]t appears [Petitioner] identified a topographical error similar to that – to the spelling of my name. My apologies.  If you wish I can strike through correct, initial [and] date."  (*Id*. at 50).[3]

---

[3] The SHO submitted a declaration "in support of return to order to show cause" before the Superior Court of Del Norte County asserting that Petitioner's contention that the hearing was untimely because it commenced on March 2, 2016 and was continued to March 4, 2016 is "incorrect."  (Doc. No. 38-9 at 4). Rather, the SHO verified that, as reflected in his report, the hearing commenced on February 29, 2016, was continued because C/O Cleary was not available, and was reconvened on March 2, 2016.  The SHO further noted that he "verified through time keeping records at the prison that [he]was on duty on February 29, 2016.  [He] also verified that [he] was on duty on March 2, 2016 and that [he] requested an hour of overtime so that [he] could complete his report.  Finally, [he] verified that [he] was not on duty at all on March 4, 2016, thus, [he] could not have presided over a hearing on that date."  (*Id*.).

7

In the second level response to that appeal, the reviewer found the finding of the senior hearing officer was reasonable and Petitioner "failed to present sufficient evidence to warrant a reduction or dismissal in the finding."  Thus, Petitioner's "request for the guilty finding of conspiracy to distribute controlled substances be dismissed is DENIED."  (*Id*. at 72-74).  The reviewer at the third level agreed and expanded upon those findings as follows:

> The appeals process is not intended to provide a rehearing of the RVR rather it is to determine whether the appellant was afforded his due process and administrative protections in the adjudication of the disciplinary.  The Third Level of Review (TLR) will conduct a review of the hearing and consider if the final determination of the [Senior Hearing Officer ("SHO")] was reasonable and the finding is supported by some evidence.  Evidence and/or factors that were reasonably discoverable at the time of the disciplinary hearing but not presented at the hearing are not evaluated by the TLR.
>
> The Examiner thoroughly reviewed all documents relative to the appellant's RVR and finds that the Senior Hearing Officer provided a very thorough synopsis of the preponderance of evidence used to find the appellant guilty and assessed a credit forfeiture in compliance with the credit forfeiture schedule.  The TLR finds the appellant was afforded all required due process.
>
> The appellant's appeal issue and request are not supported.  The constraints were met. The date of discovery is September 23, 2014. The appellant was issued his initial copy of the RVR on October 7, 2014, within the mandated 15 days allowed, and on that ate he requested the disciplinary hearing he postponed pending the District Attorney (DA) referral.  On February 2, 2016, the institution was contacted regarding the outcome of the DA referral.  The hearing was subsequently conducted on February 29, 2016; postponed to allow for the RE's presence as requested by the appellant; and reconvened and concluded on March 2, 2016.
>
> The evidence presented does support the charge and guilty finding. The appellant's claim regarding the IE report is negated by the fact that he agreed to stipulated testimony that would have been provided by the Control Booth Officer.  The appellant has not provided any evidence the SHO was biased during the hearing of the disciplinary hearing.  No relief is warranted at the TLR.

(*Id*. at 76-77).

After exhausting his remedies, Petitioner challenged his disciplinary violation in a petition for writ of habeas corpus filed in the Del Norte County Superior Court.  The Superior Court granted an evidentiary hearing and found Petitioner did not meet his burden of proof; thus, the petition for writ of habeas corpus was denied.  (Doc. Nos. 38-3 at 2, 38-4 at 69-71; 38-6 at 75).

8

1
2
3

The California Court of Appeal and the California Supreme Court both summarily denied petitioner's habeas petitions.  (Doc. Nos. 38-6 at 75-76, 38-7).  Petitioner now proceeds on his Petition.

4
5

## II.  APPLICABLE LAW

6

### A.  AEDPA General Principles

7
8
9
10
11
12
13
14
15

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review.  *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016).  This deferential standard, set forth in § 2254(d), permits relief on a claim adjudicated on the merits, but only if the adjudication:

16
17

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

18
19

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

20
21

28 U.S.C. § 2254(d).  This standard is both mandatory and intentionally difficult to satisfy.  *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

22
23
24
25
26
27

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision.  *White*, 572 U.S. at 419.  Habeas relief is appropriate only if the state court decision was "contrary to, or unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the

28

1  Supreme Court when faced with materially indistinguishable facts.  *Mitchell v. Esparza*, 540 U.S.

2  12, 16 (2003).

3      A state court decision involves an "unreasonable application" of the Supreme Court's

4  precedents if the state court correctly identifies the governing legal principle, but applies it to the

5  facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S.

6  133, 134 (2005), or "if the state court either unreasonably extends a legal principle from

7  [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to

8  extend that principle to a new context where it should apply."  *Williams v. Taylor*, 529 U.S. 362,

9  407, (2000).  "A state court's determination that a claim lacks merit precludes federal habeas

10  relief so long as fair-minded jurists could disagree on the correctness of the state court's

11  decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The petitioner must show that the

12  state court decision "was so lacking in justification that there was an error well understood and

13  comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

14      When reviewing a claim under § 2254(d), any "determination of a factual issue made by a

15  State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting

16  the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt*

17  *v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable

18  merely because the federal habeas court would have reached a different conclusion in the first

19  instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

20      As discussed earlier, for the deferential § 2254(d) standard to apply there must have been

21  an "adjudication on the merits" in state court.  An adjudication on the merits does not require that

22  there be an opinion from the state court explaining the state court's reasoning.  *Richter*, 562 U.S.

23  at 98.  "When a federal claim has been presented to a state court and the state court has denied

24  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

25  of any indication or state-law procedural principles to the contrary."  *Id*. at 99.  "The presumption

26  may be overcome when there is reason to think some other explanation for the state court's

27  decision is more likely."  *Id*. at 99-100.  This presumption applies whether the state court fails to

28

10

discuss all the claims or discusses some claims but not others. *Johnson v. Williams*, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard. When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do." *Id.* at 1196.

> When . . . there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102. If such disagreement is possible, then the petitioner's claim must be denied. *Ibid.*

*Sexton*, 138 S. Ct. at 2558. The petitioner bears the burden to demonstrate that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

## III. ANALYSIS

### A. Ground One: Due Process Violations

#### 1. Background

Petitioner argues that his due process rights were violated when several time limits were allegedly exceeded in his prison disciplinary proceedings. First, Petitioner contends that he did not receive a copy of the July 30, 2014 RVR until October 7, 2014, thereby violating California Code of Regulations Title 15 § 3320, which prohibits the denial or forfeiture of credits when an inmate is 'not provided with a copy of the CDC Form 115 within 15 days after the discovery of

11

1    the information leading to the charges….."  (Doc. No. 1 at 11 (citing Cal. Code Regs. tit. 15, §

2    3320)).  Petitioner acknowledges that the RVR noted September 23, 2014 as the "date of

3    discovery" but argues that "[a]llowing September 23rd as the date of discovery is against title 15

4    3320 [because] Petitioner had already been in [ASU] since [July 30, 2014] it would deny him due

5    process and prejudice his hearing to allow [September 23, 2014] to be the official date of

6    discovery." (*Id.* at 12).  Second, Petitioner appears to claim that the disciplinary proceedings

7    "violat[ed] fair and speedy hearing policies" because the hearing was held  "a year and a [half]"

8    after the incident and 31 days after decision by the country prosecutor declining to prosecute on

9    February 2, 2016 in violation of "CCR 15 3320(e)(4)."[4]  (*Id.* at 11-12).

10          As noted above, at the third level review of Petitioner's prison appeal the reviewer found

11   Petitioner's claimed due process violations

12                  are not supported.  The constraints were met. The date of discovery
                    is September 23, 2014.  The appellant was issued his initial copy of
13                  the RVR on October 7, 2014, within the mandated 15 days allowed,
                    and on that date he requested the disciplinary hearing he postponed
14                  pending the District Attorney (DA) referral.  On February 2, 2016,
                    the institution was contacted regarding the outcome of the DA
15                  referral.  The hearing was subsequently conducted on February 29,
                    2016; postponed to allow for the RE's presence as requested by the
16                  appellant; and reconvened and concluded on March 2, 2016.

17   (Doc. No. 38-1 at 76).

18                **2. Petitioner is Not Entitled to Relief on Ground One**

19          First, to the extent Petitioner challenges the state court decisions concerning the timing of

20   his disciplinary proceedings under state regulations, his claim is not cognizable on habeas review.

21   (Doc. No. 38 at 12).  Federal habeas corpus relief "does not lie for errors of state law," *Estelle v.*

22   *McGuire*, 502 U.S. 62, 67 (1991), and this court is bound by the state court's determination based

23   on state law, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's

24   interpretation of state law, including one announced on direct appeal of the challenged conviction,

25   binds a federal court sitting in habeas corpus.").  *See also Waddington v. Sarausad*, 555 U.S. 179,

26

_____

27   [4] The Court presumes Petitioner intended to cite Cal. Code Regs. tit. 15 § 3320(f)(4) which indicates that
     denial or forfeiture of credits is precluded if the "disciplinary hearing was not held within 30 days after the
28   chief disciplinary officer was notified of the outcome of a prosecution referral . …."

192 n.5 (2009) ("we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'").  Moreover, a habeas petitioner may not 'transform a state-law issue into a federal one" merely by asserting a violation of the federal constitution.  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997).  Thus, to the extent Petitioner's claims are based on alleged violations of state laws, such as the California Penal Code and/or California prison regulations, his claims are not cognizable in federal habeas proceedings.

Second, as noted by Respondent, there is no clearly established federal law requiring prison officials to hold a disciplinary hearing within a specific time from the date notice is given, or "according to a particular schedule provided by state regulations."  (Doc. No. 38 at 12-14); *See Medina v. Sullivan*, 2011 WL 3741011, at *7 (E.D. Cal. Aug. 24, 2011) ("there is no clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) that would require that prison officials either comply with California's regulation concerning the time limits of holding a prison disciplinary hearing, or give any other specific time period of notice beyond the twenty-four minimum set in *Wolff*.").  However, inmates subjected to disciplinary action that carries a potential loss of good-time credits are entitled to certain limited due process procedural protections, albeit not the full panoply of rights afforded to criminal defendants.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).  In the context of prison disciplinary proceedings, due process requires that the prisoner receive the following procedural guarantees: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  *Wolff*, 418 U.S. at 563-567; *Hill*, 472 U.S. at 454.

Here, Petitioner does not challenge that he received written notice more than twenty-four hours before his hearing, that he was able to present arguments and evidence at the hearing before an impartial hearing body, or that he received a written statement of the reasons for the SHO's

1   decision, which is all the process he was due pursuant to clearly established Supreme Court case

2   law.  *See id.*  Rather, Petitioner argues that the prison disciplinary proceedings failed to comply

3   with timeframes set forth in the California Code of Regulations.[5]  However, the Supreme Court

4   has not clearly established that a prison must inform a prisoner of an alleged violation within a

5   specific time from the date it discovered the facts underlying the charge, nor has it established

6   that a hearing must take place within a certain time frame from the date notice is given.

7   Accordingly, Petitioner's claim that the prison violated its procedures does not warrant federal

8   habeas relief.  *See Penton v. Huber*, 2013 WL 1156501, at *7 (E.D. Cal. Mar. 19, 2013) (violation

9   of prison regulation requiring disciplinary hearing within thirty days does not state a

10  constitutional claim); *Garrett v. Marshall*, 2009 WL 3417786, at *3 (C.D. Cal. Oct.20, 2009)

11  ("Petitioner['s] claim[ ] that the prison officials violated Cal. Penal Code § 2932(c)(1)(A), and

12  California Code of Regulation, Tit. 15, § 3320 by not providing him with notice of the

13  disciplinary charges within 15 days after discovery of the evidence giving rise to the charges ... is

14  firmly rooted in state law and thus  is not cognizable in a federal habeas corpus petition.").  Thus,

15  even assuming Petitioner can show that prison officials failed to timely provide him with a copy

16  of the RVR or conduct the disciplinary hearing according to the deadlines set out in state

17  regulations, not conceded, he cannot demonstrate that the state court's decision was contrary to or

18  an unreasonable application of clearly established Supreme Court law.

19       Because the state court's rejection of Petitioner's claim was not an unreasonable

20  application of clearly established federal law as set forth by the Supreme Court nor based on an

21  unreasonable determination of the facts, the undersigned finds ground one of the Petition is

22  without merit and should be denied.

23       **B.  Ground Two: Insufficient Evidence**

24            **1.  Background**

25       In his second ground, Petitioner argues the SHO "imposed [a] finding of guilt for

26  distribution of controlled substance when evidence only supported conspiracy to introduce."

27  ─────────────────────

28  [5] Notably, the disciplinary was delayed upon Petitioner's request that the hearing be postponed until after the state criminal proceedings concerning the incident had concluded.

(Doc. No. 1 at 11).  In support of this argument, the Petition first outlines evidence used by the SHO to support "a finding of guilt for distribution," as follows:

- ISU claims that petitioner was recorded via phone system recording device placing a call to a person on the streets requesting that she set up pen pals for Godfrey and to 'have the girls write' alleged [sic] dialog for her to smug[gle] drugs within the letters.  Original date of first call was June 29th, 2014.

- On July 13th, 2014 ISU allegedly recorded Godfrey requesting 4 letters from member of the community and exchanged one greendot number as payment for the drugs.

- On July 14th Godfrey allegedly calls the member again to confirm the previous call.  That concluded the recorded evidence.

- On July 30th [m]ail room staff intercepted 2 incoming mailings, they intercepted another mailing addressed to Godfrey the following day[,] July 31st.  ISU allegedly recovered a mailing addressed to Godfrey within the property of his cell mate [Gibson] also had [contraband] intercepted via USPS.

(Doc. No. 1 at 12).  Based on this own recounting of the evidence presented at the disciplinary hearing, Petitioner claims

- [t]here was no further evidence to support ISU's claim of distribution network in PBSP [sic] aside from other inmates relaying either phone numbers or instructing the member of the community 'to have the girl write.' ISU never produced the source of the green dot numbers nor had any witnesses to support their theory.

- [Plainly] petitioner never distributed any drugs the alleged 4 letters were all recovered by ISU, [and] intercepted by mail room attendants. [F]urther, there was never any [amount] of methamphetamine retrieved to distribute.  [A]ll samples were .02 grams.  ISU fabricated a story to deny petitioner his due process and equal protection based on a preponderance of evidence.

(*Id*.).  As noted above, at the third level review of Petitioner's prison appeal the reviewer found the evidence supported the charge and guilty finding.  (Doc. No. 38-1 at 76).  The Del Norte Superior Court denied Petitioner's petition for writ of habeas corpus because he failed to state a *prima facie* case supporting his claim.  (Doc. No. 38-3 at 2).

**2.  Petitioner is Not Entitled to Relief on Ground Two**

15

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Hill*, 472 U.S. at 455.  A finding of guilt on a prison disciplinary charge cannot be "without support" or "arbitrary." *Id.* at 457.  The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)).  Determining whether this standard is satisfied in a particular case does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986), *abrogated in part on other grounds* by *Sandin v. Connor*, 515 U.S. 472 (1995).  Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455.  The question is whether there is any reliable evidence in the record that could support the decision reached. *Toussaint*, 801 F.2d at 1105.

Petitioner appears to concede that there is evidence that he conspired to introduce a controlled substance into PBSP, but argues there is no evidence to support a finding that he actually distributed a controlled substance.  (Doc. No. 1 at 12).  As defined by the State of California for these purposes, distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; *or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution.*  Cal. Code Regs. tit. 15, § 3000 (2014) (defining distribution for purposes of § 3016(c)—emphasis added).

Respondent counters that "it cannot be said there was no reasonable basis for the Superior Court's decision, or the Court of Appeal and California Supreme Court's affirmation of that decision," as they were presented with the following information: C/O Cleary testified that three incoming mailings were recovered in Petitioner's personal property or intercepted before reaching Petitioner that contained methamphetamine under the postage stamp; Shirley Withers, the

1   community member, had a mailing addressed to Petitioner in her possession; Godfrey placed

2   three phone calls to Withers and asked her to send four letters containing methamphetamine to

3   himself and four to another inmate using coded language; Godfrey provided a fourteen-digit

4   Green Dot account number as payment and the subpoena responses by Green Dot indicate the

5   number relayed by Godfrey and other inmates was credited against Withers' Green Dot card; and

6   C/O Cleary testified he was "absolutely positive" the letters containing methamphetamine under

7   the postage stamp were discovered in Petitioner's personal property.  (Doc. No. 38 at 16-17).

8   Perhaps most relevant to refute Petitioner's argument that there was insufficient evidence that he

9   *distributed* a controlled substance, Respondent noted that the SHO specifically found the

10  investigation revealed the scope of the drug transactions exceeded the amount for individual

11  consumption.  For example, forty-nine inmate telephone calls were monitored, and those calls

12  indicate approximately seventy-five to 100 mailings containing methamphetamine were likely

13  sent to PBSP between March 7, 2014 and July 31, 2014.  (*Id*. at 17).

14       Petitioner's contention that there is no "further" evidence to support a finding that he

15  actually distributed a controlled substance is "based on his differing opinion as to the proper

16  interpretation of evidence rather than the total absence of evidence"; however, Petitioner fails to

17  show that it was unreasonable to interpret the evidence cited by Respondent as indicating that

18  Petitioner distributed the methamphetamine.  *Orozco v. Sullivan*, 2020 WL 2521761, at *5 (E.D.

19  Cal. May 18, 2020) (finding superior court's rejection of Petitioner's claim that "some evidence"

20  evidence standard was not met for disciplinary conviction for possession of controlled substance

21  with intent to distribute was not contrary to or an unreasonable application of clearly established

22  law); *Thigpen v. Martel*, 2019 WL 5063429, at *5 (E.D. Cal. Oct. 9, 2019) (finding "[i]t is

23  certainly possible that petitioner possessed the marijuana only for personal use.  However, under

24  AEDPA standards, it was reasonable for the [CDCR] and state courts to find that 'some evidence'

25  existed sufficient to demonstrate that petitioner violated Cal. Code Regs. tit. 15, § 3016(c)).

26       Based on the foregoing, the undersigned concludes that the prison disciplinary finding that

27  Petitioner was guilty of distribution of a controlled substance in an institution/facility was

28  supported by "some evidence" and was not unreasonable in light of the minimally stringent

1   nature of the standard of proof.  *See Hill*, 472 U.S. at 455-56 ("Ascertaining whether this standard

2   is satisfied does not require examination of the entire record, independent assessment of the

3   credibility of witnesses, or weighing of the evidence.  Instead the relevant question is whether

4   there is any evidence in the record that could support the conclusion reached by the disciplinary

5   board.").

6         Because the state court's decision was not contrary to, or an unreasonable application of,

7   clearly established Supreme Court precedent, nor an unreasonable determination of the facts, the

8   undersigned finds ground two is without merit and should be denied.

9                          **IV.  CERTIFICATE OF APPEALABIILTY**

10        A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district

11   court's denial of a petition; he may appeal only in limited circumstances.  *See* 28 U.S.C. § 2253;

12   *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 Governing § 2254 Cases requires a

13   district court to issue or deny a certificate of appealability when entering a final order adverse to a

14   petitioner.  *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th

15   Cir. 1997).  A certificate of appealability will not issue unless a petitioner makes "a substantial

16   showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires

17   the petitioner to show that "jurists of reason could disagree with the district court's resolution of

18   his constitutional claims or that jurists could conclude the issues presented are adequate to

19   deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *accord Slack v.*

20   *McDaniel*, 529 U.S. 473, 484 (2000).  Here, Petitioner has not made a substantial showing of the

21   denial of a constitutional right.  Thus, the undersigned recommends that the court decline to issue

22   a certificate of appealability.

23        Accordingly, it is **RECOMMENDED**:

24            1.  Petitioner be denied all relief on his Petition.  (Doc. No. 1).

25            2.  Petitioner be denied a certificate of appealability.

26                                **NOTICE TO PARTIES**

27        These findings and recommendations will be submitted to the United States district judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


Dated:    June 29, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

19